## Y. AOYAMA *v.* CHARLES H. ROSE AND JOSEPH S. NOBREGA.

### No. 1493.

### EXCEPTIONS FROM CIRCUIT COURT FIRST CIRCUIT. HON. F. ANDRADE, JUDGE.

ARGUED NOVEMBER 1, 1923.                DECIDED NOVEMBER 22, 1923.

PETERS, C. J., PERRY AND LINDSAY, JJ.

CONDITIONAL SALE—*interest of vendee of chattel under before performance of conditions.*

Under a conditional sale of a chattel the terms of which provide that title shall not pass to vendee until payment of the purchase price, the vendee acquires no interest in the chattel itself which he may sell or assign, the right that such vendee acquires being merely the right upon performance of the conditions of sale to become the owner of the chattel.

SAME—*assignment of right of vendee under conditional sale.*

Except as restrained by the terms of the agreement of sale, the vendee under a conditional sale has such a right as he may transfer or assign.

STATUTES—*section 3120, R. L. 1915.*

The provisions of section 3120, R. L. 1915, requiring a change of possession of a thing conveyed *held* not applicable to the transfer or assignment of the right of a party to become the owner of a chattel upon performance of the terms of a conditional agreement of sale.

OPINION OF THE COURT BY LINDSAY, J.

The defendants, who are respectively the sheriff of the City and County of Honolulu and one of his deputies, on January 29, 1923, pursuant to a writ of execution issued out of the district court of Honolulu on a judgment in favor of one Gilman against Kinjo Ikeda, levied on a clothes-pressing machine lying in the "Kinjo Clothes Cleaning Shop." Plaintiff, claiming to have purchased

the machine from Kinjo Ikeda, brought an action of replevin in the first circuit court for the recovery of the same. The case was heard before a circuit judge without a jury and the trial judge rendered a decision finding that plaintiff was the owner of the machine and entitled to restitution thereof. Judgment was entered accordingly and the case comes here upon exceptions to the judgment as being contrary to the law and the evidence.

It appears from the evidence that, since the month of August 1922, Mrs. Ikeda had conducted the Kinjo Clothes Cleaning Shop on her own account, her husband taking no part in the management thereof. The license to conduct the business was in the name of Mrs. Ikeda and, on November 21, 1922, she was registered at the office of the territorial treasurer as a sole trader pursuant to section 2959, R. L. 1915. In August 1922, Ikeda obtained from the Hurd-Pohlmann Company, Limited, a clothes-pressing machine and placed it in the workshop of his wife where it remained until seized by defendants on January 29, 1923. The provisions of the agreement between the Hurd-Pohlmann Company and Ikeda were that: The company agreed to sell Ikeda the machine for the sum of $552.85 payable $100 upon the date of the agreement, $175 on delivery of the machine to Ikeda, $138.95 on September 25, 1922, and $138.90 on October 25, 1922; that upon the full payment of said sum of $552.85 and interest the company would make, execute and deliver to Ikeda a bill of sale of the machine; title to the machine to be and remain in the company until full payment should be made as aforesaid, and Ikeda acquired no interest in the machine, which he might sell, assign, transfer, lease, let, mortgage or in any way dispose of or which might be levied upon or attached.

Sometime during the month of November 1922 plaintiff and Ikeda entered into negotiations for the purchase

by plaintiff of the machine for $552.85. On November 20 plaintiff paid Ikeda $50 on account of the purchase price and on November 29 plaintiff paid Ikeda the balance of $502.85. At that time the Hurd-Pohlmann Company, Limited, had not been paid the full amount of the purchase price agreed upon between it and Ikeda. The final instalment was paid to Hurd-Pohlmann Company about the middle of January 1923, whether by Ikeda or by plaintiff is not clear from the evidence, neither does it appear whether at the time the final payment was made the creditor of Ikeda had recovered the judgment against Ikeda upon which the levy was made. On December 1, 1922, or two days after the last payment by plaintiff to Ikeda, plaintiff took over from Mrs. Ikeda the clothes-cleaning business, upon an arrangement under which he was to pay Mrs. Ikeda a monthly rental of $30 for the same. Thereafter plaintiff ran the business on his own behalf, collecting all of the receipts thereof. Mr. and Mrs. Ikeda continued to live, as they had before, in or about the shop premises, Mrs. Ikeda occasionally doing some odd jobs in the shop, not for pay but, as she expressed it, "just to help Aoyama out."

The contention of defendant is that, under the evidence, the alleged sale of the machine by Ikeda to plaintiff was void as to the judgment creditor under section 3120, R. L. 1915, which prescribes that a conveyance of personal property not accompanied by immediate possession and followed by an actual and continued change of possession of the thing conveyed shall be void against creditors of the vendor unless such conveyance shall be recorded in the office of the registrar of conveyances. In the instant case Ikeda gave plaintiff no bill of sale or other writing transferring his interest in the machine, and no instrument concerning the transaction was placed of record.

Was the transaction between plaintiff and Ikeda such a conveyance of personal property that, under the statute, required a change of possession of the thing conveyed? In other words, is section 3120, R. L. 1915, applicable to the facts in this case? This may be made clearer if it first be considered what, under the facts herein, was the thing conveyed by Ikeda to plaintiff.

The controversy between the parties hereto has proceeded upon the theory that Ikeda sold the clothes-pressing machine itself to plaintiff, defendants' contention being that the sale was void as to the judgment creditor because it was not followed by such a change of possession of the machine as is required by the statute, while plaintiff contends that the evidence showed a sufficient compliance with the statute. If, on December 1, 1922, Ikeda had been owner of the machine, the sole question at issue would have been that urged by the parties, but from the facts in the case, the question of a change of possession is not material. As already stated, under the express terms of the agreement between Hurd-Pohlmann Company, Limited, and Ikeda, title to the machine was to remain in Hurd-Pohlmann Company until the price agreed upon was paid in full. Such agreements are common and are frequently referred to as conditional sales, but, as pointed out by the authorities, this is a misnomer for an agreement of this character is in reality nothing more than a mere agreement to sell, or, as called in *Sanders* v. *Keber,* 28 Ohio St. 630, a bailment with a contract for a future sale. Under the agreement, therefore, Ikeda acquired no interest in the machine itself, all that he did acquire being the right, under certain circumstances, to compel the owner of the machine to convey it to him. It follows, therefore, that, not owning the machine itself or any interest therein, Ikeda could not sell nor convey the same to plaintiff. As ex-

pressed by Mr. Mechem in his learned work on sales:
"Unlike the cases here being considered, and to be dis-
tinguished from them, is the case of the purchaser who
has contracted upon the condition that, though the pos-
session may be delivered to him, no title shall pass to
him until the price is paid. Here, until the payment of
the price, the vendee has by the express terms of the
agreement no present title at all, not even a defeasible
one; and, as will be seen, it is settled, by the great weight
of authority, that until he acquires title by payment he
can transfer none even to a bona fide purchaser for
value." 1 Mechem on Sales, Sec. 152.

Under the terms of the agreement between the Hurd-
Pohlmann Company, Limited, and Ikeda, as already ob-
served, Ikeda acquired no interest in the machine which
he might sell, assign, transfer or dispose of in such
manner as might interfere with the ownership of the
Hurd-Pohlmann Company,. Limited. Under such a pro-
vision, however, it does not follow that Ikeda had no
rights in the premises that he could assign to a third
party. Ikeda had the right to become the owner of the
machine upon performance of the conditions of his
agreement with the Hurd-Pohlmann Company (see 1
Mechem on Sales, Sec. 587) which right (at least as
against every one but the Hurd-Pohlmann Company)
he could assign or transfer to a third party, and although
the parties herein speak of the transaction between Ikeda
and plaintiff as a sale of the machine itself, it is clear
that they considered it as a mere transfer of whatever
right Ikeda had, for it appears from the evidence that
plaintiff was fully advised as to the state of Ikeda's
ownership and, at the time of the sale as testified to by
Ikeda, "the provision was this, that after transferring
this machine to Aoyama that he, Aoyama, and I were
to go down to the company, and that thereafter Aoya-

ma's name was to appear instead of mine." Whether this plan was followed does not appear from the evidence and it is immaterial but this testimony is significant in that it shows the true nature of the thing conveyed—not the machine itself, but merely the right that had been Ikeda's under the terms of his agreement with the owner of the machine.

Ikeda, as already stated, having the right to become the owner of the machine upon complying with the terms of his contract with the Hurd-Pohlmann Company, Limited, and having (except as against the Hurd-Pohlmann Company, Limited) the right to assign that right, it follows that, after the transfer of Ikeda's right to plaintiff, plaintiff stood in the same position that had been occupied by Ikeda and had the right to become the owner of the machine when the terms of the contract with the Hurd-Pohlmann Company, Limited, were complied with. It appearing from the evidence that performance of the conditions of the agreement of sale was accomplished about the middle of January 1923, title in the machine became vested in plaintiff at that time, for "upon performance of the condition of the sale, the title to the property vests in the vendee, or, in the event that he has sold or mortgaged it, in his vendee or mortgagee without further bill of sale." 1 Mechem on Sales, Sec. 588, n. 1 and cases cited.

The thing, then, that Ikeda conveyed to plaintiff not being a tangible or corporeal object but a mere intangible right incapable of physical possession or change of possession, it is obvious that the language of section 3120, R. L. 1915, is not applicable. As said in 27 C. J., p. 589: "The rule that possession must accompany the title does not apply to the sale or assignment of intangible property such as a debt which may be assigned

by transfer and notice to the debtor, or to the assignment of the benefit of an executory contract."

"The rules pertaining to a change of possession of goods and chattels upon a sale thereof, or to the filing of a lien thereon, and the dominion required to be exercised by a purchaser, mortgagee or pledgee of tangible property cannot be applied to a sale or pledge of indebtedness intangible of itself, only the evidence of which, if in writing, is perceptible. The conditions are not the same, and the rules of law applicable to transfers of the two classes of property differ. As to one, the possession of which is evidence of ownership, the dealings must be open, visible and public; while as to the other the business may be, as it usually is, private. The necessities of business require it." *Stackhouse* v. *Holden*, 73 N. Y. S. 203, 205. See also *Young* v. *Upson*, 115 Fed. 192, 195 and *Frankfort Chair Co.* v. *Buchanan*, 51 S. W. (Ky.) 179.

In *Livingston* v. *Littell*, 15 Wis. 218, it was held that the statute declaring that "every assignment of goods and chattels, unless the same * * * be followed by an actual and continued change of possession * * * shall be presumed to be fraudulent and void as against the creditors of the person making the assignment" did not apply to an assignment of choses in action, and in *Campbell* v. *Nat. Bank*, 105 S. E. (S. C.) 413, the court in construing a similar statute said: "The statute never contemplated that such securities should come within the terms of this section. It contemplated such tangible property as steam engines, pianos, organs, mules, stock of goods, and such property of like character, and never was intended to apply to negotiable securities, notes, bonds, mortgages, and such property as goes usually by assignment or actual delivery. The action applies to tangible personal property."

Inasmuch as the provisions of section 3120, R. L. 1915, are not applicable to the facts in this case the

trial judge properly found that plaintiff was the owner of the machine in controversy and as such was entitled to restitution thereof.  The exceptions are overruled.

*J. B. Lightfoot* (*Lightfoot & Lightfoot* on the brief) for plaintiff.

*G. K. French* (also on the briefs) for defendants.